5. INSURANCE, § 331*—*when notice to medical examiner is notice to insurer.* Notice to the medical examiner of a life insurance company of the facts concerning the health of insured acquired at time of the examination is notice to the company.

6. INSURANCE, § 333*—*when medical examiner agent of insurer.* A medical examiner of a life insurance company must be deemed the agent of the company although he is paid by the insured for the examination, and the policy contains a provision making him the agent of the insured.

7. DISMISSAL, NONSUIT- AND DISCONTINUANCE, § 26*—*when may be set aside.* It is within the discretion of the court to set aside an order of dismissal of a case, obtained at the instance of plaintiff to avoid a nonsuit, and to reinstate the case upon the docket at the same term, especially where it appears to the court that it was done in the interests of justice.

8. APPEAL AND ERROR, § 1296*—*when setting aside dismissal presumed proper.* It will be presumed that the trial court did not abuse its discretion in setting aside an order of dismissal of a case obtained by plaintiff and reinstating the case upon the docket at the same term, where the facts upon which the trial court based its decision setting aside the order of dismissal are not before the Appellate Court.

---

### J. P. Borman, Appellant, v. Theo. J. Gebauer and Bess J. Gebauer, Appellees.

#### (Not to be reported in full.)

Appeal from the Circuit Court of Madison county; the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed May 1, 1915.

### Statement of the Case.

Action by J. P. Borman against Theo. J. Gebauer and Bess J. Gebauer upon a promissory note. From a judgment for defendants, plaintiff appeals

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

On August 5, 1912, A. B. Black purchased a butcher shop in Troy, Illinois, for a consideration of $1,000, and in order to pay for the same borrowed the amount of $600 from the Troy Exchange Bank, giving his father-in-law, G. C. Bauer, as surety thereon. This note was payable one year after date, and to complete the payment for such shop said Black executed and delivered to one Ed. Kline a chattel mortgage upon the fixtures, securing a note for $400. A. B. Black continued in the butcher business for about sixty days and then sold the business to his brother-in-law, the defendant Theo. J. Gebauer, for $1,000. A new note and chattel mortgage was executed to Kline and was taken up. The defendants executed and delivered to A. B. Black a note for $600, bearing date of September 21, 1912, due ten months after date for the amount of $600, and payable to the order of A. B. Black. It was claimed by the defendants that this was given as what they termed a security note and that it was understood and agreed that the defendant Theo. J. Gebauer was to pay the note bearing date of August 5, 1912, for $600 heretofore described to the Troy Exchange Bank, take that note up and deliver it to Black, whereupon Black was to return to defendants the $600 note executed to them. It further appeared from the evidence that before the note bearing date of September 21, 1912, became due, and on July 1, 1913, that A. B. Black sold and delivered this note to Dr. F. W. Braner for a valuable consideration and Braner thereafter transferred said note to the plaintiff for collection, upon which plaintiff instituted this suit.

It was claimed by defendants that at the maturity of the note executed by Black and others to the Troy Exchange Bank, defendant Theo J. Gebauer paid this note to the bank and claimed that the note bearing date of September 21st and payable to A. B. Black was transferred to F. W. Braner after its maturity, and that by reason of this agreement with Black and the payment

of the note bearing date of August 5th, the note sued upon was satisfied and should be surrendered to defendants. Upon the other hand, it was claimed by plaintiff that Dr. Braner purchased the note sued upon before its maturity for a valuable consideration without notice of any defense thereto, and that the defense offered by defendants was not warranted and that he was entitled to recover the full amount of the note. The only evidence offered by defendants for the purpose of showing that the note in question was transferred after maturity was the testimony of the witness H. C. Kersey, who says that at Mr. Gebauer's request he went on August 30th to see Mr. Black about delivering to Black the note that defendants had paid to the Troy Exchange Bank in exchange for the note in question, and that Mr. Black then stated: "He told me there was some other matters between him and Mr. Gebauer had to be settled before he would give up the note." Also the testimony of Mrs. Chawen Gebauer, who says that on or about July 18, 1913, Black said he would turn it over to Theo. Gebauer. She was then asked the question: "Q.—You didn't know where the note was at the time? A.—It was in his possession I think because he said it was. Q.—I say, do you know whether it was? A.—I don't know. He told me he had it, that is all I can tell you." And the further testimony of H. C. Kersey, who says that on Monday September 1, 1913, "I went down and notified Dr. Braner, telling him that note had been paid and we demanded the other note, and I says this is security for the other note, and he asked me if the bankers knew it. I said 'Sure.' That was all that passed between us. I told him the note I was talking about." Witness also said this was all that was said by Braner. Constable Kersey testified that he saw Dr. Braner on September 1st and notified him not to purchase the note but did not claim that Dr. Braner said anything. He simply said that he told Braner not to purchase the

note, that it had been paid, and he simply asked if the bankers knew it, and said that was all that passed between them.

EARLY, HILES & SIMPSON, for appellant.

SPRINGER & BUCKLEY, for appellees.

MR. PRESIDING JUSTICE McBRIDE delivered the opinion of the court.

### Abstract of the Decision.

1. BILLS AND NOTES, § 396*—*presumption of negotiation before maturity.* The presumption of law is that except where an indorsement bears date after maturity of the instrument, every negotiation is deemed prima facie to have been effected before maturity.

2. EVIDENCE, § 201*—*when declarations of prior holder of note inadmissible against transferee.* Declarations by the indorser of a promissory note that he had the note at a date after maturity are incompetent, in an action by a subsequent indorsee against the maker, where such indorser was not a party to the action, and there was no proof first made that the note had not been transferred at the time of the making of the declaration.

3. BILLS AND NOTES, § 446*—*when evidence shows transfer before maturity.* The presumption of law that every negotiation is deemed prima facie to have been effected before maturity, where no indorsement bears date after maturity, supported by the testimony of two witnesses that the instrument was transferred before maturity, is not overcome by the testimony of one witness that after maturity of the note he went to the subsequent indorsee and told him not to purchase the note, that it had been paid, although the indorsee said nothing, except that he asked "if the bankers knew it."

4. BILLS AND NOTES, § 321*—*power of indorsee for collection.* The indorsee of a promissory note for collection has the legal title thereto, and may sue thereon.

5. BILLS AND NOTES, § 258*—*what defenses improper against second transferee.* A second assignee of a note who purchases and receives it after maturity is entitled to the same protection as the first assignee who receives it before maturity, and no defense can be urged against the note in his hands not admissible against the first assignee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.